UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

D.E. & J LIMITED PARTNERSHIP,
individually and on behalf of All Others
Similarly Situated,

    Plaintiffs,

v

CHARLES CONAWAY, JEFFREY BOYER,
MARK S. SCHWARTZ, MATTHEW F.
HILZINGER, MARTIN E. WELCH, and
PRICEWATERHOUSECOOPERS, LLP,

    Defendants.

Case No. 02-70684
Hon. Gerald E. Rosen

**DEFENDANT SCHWARTZ'S
MOTION TO DISMISS THE
CONSOLIDATED AMENDED
COMPLAINT**

---

**Milber Weiss Bershad Hynes & Lerach, LLP**
Attorneys for Plaintiffs
By: Samuel H. Rudman
Kim Miller Levy
One Pennsylvania Place - 49th Floor
New York, NY 10119
212.594.5300

**Mantese Miller and Mantese, P.L.L.C.**
Local Counsel for Plaintiffs
By: E. Powell Miller (P39487)
Marc L. Newman (P51393)
1301 W. Long Lake Road
Suite 135
Troy, MI 48098
248.267.1200

**Barris, Sott, Denn & Driker, P.L.L.C.**
Local Counsel for Defendant Conaway
By: Sharon M. Woods (P22542)
Todd R. Mendel (P55447)
Matthew R. Millikin (P63011)
211 West Fort Street, 15th Floor
Detroit, MI 48226
313.965.9725

**Schiffrin & Barroway, LLP**
Attorneys for Plaintiffs
By: David Kessler
Three Bala Plaza East
Suite 500
Bala Cynwyd, PA 19004
610.667.7706

**Sidley Austin Brown & Wood**
Attorneys for Defendant Conaway
By: Walter C. Carlson
Scott R. Lassar
Hille R. Sheppard
Erin E. Kelly
Bank One Plaza, 10 S. Dearborn St.
Chicago, IL 60603
312.853.7000

**Kirkland & Ellis**
Attorneys for PriceWaterhouse
By: John F. Hartmann
200 East Randolph Drive
Chicago, IL 60601
312.861.2215

1



| Law Office of Brian Rosner | Williams Mullen |
|---|---|
| Attorneys for Defendant Schwartz | Local Counsel for Schwartz |
| By: Brian Rosner | By: Eric H. Lipsitt (P32117) |
| Natalie A. Napierala | Michael A. Sneyd (P52073) |
| 3 New York Plaza | 11th Floor Buhl Building |
| New York, NY 10004 | 535 Griswold Street |
| 212.785.2577 | Detroit, MI 48226 |
| | 313.962.0643 |

## DEFENDANT MARK S. SCHWARTZ'S MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

Defendant Mark S. Schwartz (**"Mr. Schwartz"**), through his attorneys, The Law Office of Brian Rosner and Williams Mullen, and for his Motion to Dismiss the Consolidated Amended Complaint pursuant to F. R. Civ. P. 12(b)(6), states as follows:

1.  The Plaintiffs filed this lawsuit on August 15, 2002, alleging, in part, that Mr. Schwartz violated Section 10(b) of the Exchange Act and SEC Rule 10b-5.

2.  The parties have entered a stipulated extension, granting the Defendants until November 22, 2002 to answer or otherwise plead or respond to the Consolidated Amended Complaint.

3.  Mr. Schwartz files this Motion to Dismiss as his pleading in response to the Plaintiffs' Consolidated Amended Complaint.

4.  Concurrent with this Motion, Mr. Schwartz has filed a Motion to Strike Exhibit A from the Consolidated Amended Complaint and a Motion to Extend the Page Limitations for this Motion to Dismiss.

5.    The Consolidated Amended Complaint fails to state a claim upon which relief can be granted because the Plaintiffs fail to properly allege:

    a.  That Mr. Schwartz made any misstatements or omissions with fraudulent intent;

    b.  That Mr. Schwartz had the opportunity or motive to commit securities fraud;

    c.  That there was a divergence between Mr. Schwartz's public and private disclosures;

    d.  That a "primary actor" (as defined by Section 20(a) of the Exchange Act) has violated any securities laws; and

    e.  That Mr. Schwartz is a "controlling person" (as defined by Section 20(a) of the Exchange Act) or a primary violator of a securities law.

6.    The Plaintiffs failed to properly plead any cause of action against Mr. Schwartz, and thus, the Plaintiffs' Consolidated Amended Complaint should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

7.    Pursuant to Local Rule 7.1, there was a conference between counsel for Mr. Schwartz and the Plaintiffs' counsel, in which counsel for Mr. Schwartz explained the nature of this motion and its legal basis and requested but did not obtain concurrence in the relief sought.

WHEREFORE, for the foregoing reasons, Defendant Mark S. Schwartz respectfully requests that this Court grant his Motion to Dismiss the Consolidated Amended Complaint, and grant any further relief that this Court deems just and proper.

Respectfully submitted,

One of the Attorneys for
Defendant Mark S. Schwartz

**Law Office of Brian Rosner**
Attorneys for Defendant Schwartz
By: Natalie A. Napierala
3 New York Plaza – 14th Floor
New York, NY 10004
212.785.2577

**Williams Mullen**
Eric H. Lipsitt (P32117)
Michael A. Sneyd (P52073)
11th Floor Buhl Building
535 Griswold Street
Detroit, MI 48226
313.962.0643

Dated: November 22, 2002

P:\PENDING\DE&J-Schwartz\Mtn-Dismiss-mtn.doc

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

D.E. & J LIMITED PARTNERSHIP,
individually and on behalf of All Others
Similarly Situated,

       Plaintiffs,

v

CHARLES CONAWAY, JEFFREY BOYER,
MARK S. SCHWARTZ, MATTHEW F.
HILZINGER, MARTIN E. WELCH, and
PRICEWATERHOUSECOOPERS, LLP,

       Defendants.

Case No. 02-70684
Hon. Gerald E. Rosen

**BRIEF IN SUPPPORT OF
DEFENDANT SCHWARTZ'S
MOTION TO DISMISS THE
CONSOLIDATED AMENDED
COMPLAINT**

---

**Milber Weiss Bershad Hynes & Lerach, LLP**
Attorneys for Plaintiffs
By: Samuel H. Rudman
Kim Miller Levy
One Pennsylvania Place - 49th Floor
New York, NY 10119
212.594.5300

**Mantese Miller and Mantese, P.L.L.C.**
Local Counsel for Plaintiffs
By: E. Powell Miller (P39487)
Marc L. Newman (P51393)
1301 W. Long Lake Road
Suite 135
Troy, MI 48098
248.267.1200

**Barris, Sott, Denn & Driker, P.L.L.C.**
Local Counsel for Defendant Conaway
By: Sharon M. Woods (P22542)
Todd R. Mendel (P55447)
Matthew R. Millikin (P63011)
211 West Fort Street, 15th Floor
Detroit, MI 48226
313.965.9725

**Schiffrin & Barroway, LLP**
Attorneys for Plaintiffs
By: David Kessler
Three Bala Plaza East
Suite 500
Bala Cynwyd, PA 19004
610.667.7706

**Sidley Austin Brown & Wood**
Attorneys for Defendant Conaway
By: Walter C. Carlson
Scott R. Lassar
Hille R. Sheppard
Erin E. Kelly
Bank One Plaza, 10 S. Dearborn St.
Chicago, IL 60603
312.853.7000

**Kirkland & Ellis**
Attorneys for PriceWaterhouse
By: John F. Hartmann
200 East Randolph Drive
Chicago, IL 60601
312.861.2215

**Law Office of Brian Rosner**
Attorneys for Defendant Schwartz
By:  Brian Rosner
Natalie A. Napierala
3 New York Plaza
New York, NY 10004
212.785.2577

**Williams Mullen**
Local Counsel for Schwartz
By:  Eric H. Lipsitt (P32117)
Michael A. Sneyd (P52073)
11th Floor Buhl Building
535 Griswold Street
Detroit, MI 48226
313.962.0643

---

**BRIEF OF LAW IN SUPPORT OF
DEFENDANT MARK S. SCHWARTZ'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT**

## TABLE OF CONTENTS

CONCISE STATEMENT OF THE ISSUES PRESENTED ............................................. iv

CONTROLLING AUTHORITIES ........................................................................... v

I.   INTRODUCTION ...................................................................................... 6

II.  ARGUMENT .............................................................................................. 7

      A.   The Plaintiffs Have Not Adequately Pled Any ............................................ 7

            1.   The Complaint Avers Only That Mr. Schwartz Signed ................ 11

            2.   Alleged Violations Of GAAP Do Not ......................................... 13

            3.   The Plaintiffs Have Not Adequately Pled That Mr.
               Schwartz Had Either The Opportunity Or The Motive To
               Commit Securities Fraud .............................................................. 17

            4.   The Plaintiffs Have Not Alleged That There Was A
               Divergence .................................................................................... 19

            5.   The Plaintiffs Cannot Satisfy The PSLRA Pleading
               Requirements By Basing Their Allegations On Anonymous
               Letters and Unnamed Sources ..................................................... 21

      B.   The Plaintiffs Have Failed To Plead The Requisite Elements ................. 23

III. CONCLUSION ............................................................................................ 28

## TABLE OF AUTHORITIES

**Cases**

*ABC Arbitrage Pls. Group v. Tchuruk*, 291 F.3d 336 (5th Cir. 2002), *reh'g and reh'g en banc denied*, 45 Fed.App. 327, __ F.3d __ (5th Cir. 2002) ............................................. 22

*Ballan v. Upjohn Co.*, 814 F.Supp. 1375 (W.D. Mich. 1992) ......................................... 24

*Benedict v. Cooperstock*, 23 F.Supp.2d 754 (E.D. Mich. 1998)................................ 11, 24

*Chalverus v. Pegasystems, Inc.*, 59 F.Supp.2d 226 (D.Mass. 1999) ................................. 14

*Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996) ......................................... 15

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990)...................................... 20

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976)...................................... 7

*Goldberg v. Household Bank, F.S.B.*, 890 F.2d 965 (7th Cir. 1989) ................................ 15

*Halloway v. Howerdd*, 536 F.2d 690 (6th Cir. 1976) ......................................... 12

*Havenick, et al. v. Network Express, Inc.*, 981 F.Supp. 480 (E.D.Mich. 1997) (Rosen, J.) 8

*Helwig v. Vencor*, 251 F.3d 540 (6th Cir. 2001, en banc) ........................... 9, 10, 12, 17, 19

*Herm v. Stafford*, 663 F.2d 669 (6th Cir. 1982)................................................. 24

*In re Comshare*, 183 F.3d 542, 548 (6th Cir. 1999) ..................................... 7, 9, 14, 17, 18

*In re Credit Acceptance Corp. Sec. Litig.*, 50 F.Supp.2d 662 (E.D.Mich. 1999) ................................................................... 8, 9, 14, 16, 17

*In re E.Spire Communications, Inc. Sec. Litig.*, 127 F.Supp.2d 734 (D.Md. 2001) ... 14, 18

*In re Orbital Sciences Corp. Sec. Litig.*, 58 F.Supp.2d 682 (E.D.Va. 1999).................... 15

*In re Party City Sec. Litig.*, 147 F.Supp.2d 282 (D.N.J. 2001)......................................... 22

*In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F.Supp.2d 211 (D.Mass. 1999)........... 15

*In re Rospatch Sec. Litig.*, 760 F.Supp. 1239 (W.D.Mich. 1991)............................. 12, 24

*In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) ......................................... 19

*In re Segue Software, Inc. Sec. Litig.*, 106 F.Supp.2d 161 (D.Mass. 2000) ...................... 15

*In re Silicon Graphics, Inc. Sec. Litig.*, 970 F.Supp. 746 (N.D. Ca. 1997), *aff'd,* 183 F.3d 970, 985 (9th Cir. 1999) ................................................................................................. 21

*In re Sun Healthcare Group, Inc. Sec. Litig.*, 181 F.Supp.2d 1283 (D.N.M. 2002) ......... 15

*In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407 (9th Cir. 1994) .................................... 14

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ................................................................. 18

*Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017 (6th Cir. 1979) .............................. 7

*Metge v. Baehler*, 762 F.2d 621 (8th Cir. 1985), *cert. denied*, 474 U.S. 1057 (1986) ...... 24

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ........................................................... 14, 22

*Rubenstein v. Skyteller, Inc.*, 48 F.Supp.2d 315 (S.D.N.Y. 1999) .................................... 24

*Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474 (6th Cir. 1992) .................................................................................................... 24, 27

*Vennittilli v. Primerica, Inc.*, 943 F.Supp. 793 (E.D.Mich. 1996) .................................... 25

*Yadlosky v. Grant Thornton, LLP*, 120 F.Supp.2d 622 (E.D.Mich. 2000) ....................... 18

**Statutes**

15 U.S.C. § 78u-4(b)(1) ...................................................................................................... 9

15 U.S.C. §78j(b) ................................................................................................................ 6

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .................................................................. iv, v, 6

Federal Rule of Civil Procedure 9(b) .................................................................................. 7

SEC Rule 10b-5, 17 C.F.R. §240.10b-5 ......................................................................... 6, 21

iii

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

Whether the Plaintiffs' Consolidated Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) where the Plaintiffs failed to properly allege:

a. That Mr. Schwartz made any misstatements or omissions with fraudulent intent;

b. That Mr. Schwartz had the opportunity or motive to commit securities fraud;

c. That there was a divergence between Mr. Schwartz's public and private disclosures;

d. That a "primary actor" (as defined by Section 20(a) of the Exchange Act) has violated any securities laws; and

e. That Mr. Schwartz is a "controlling person" (as defined by Section 20(a) of the Exchange Act) or a primary violator of a securities law.

## CONTROLLING AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) .................................................................. iv, v, 6

Federal Rule of Civil Procedure 9(b)................................................................................ 7

SEC Rule 10b-5, 17 C.F.R. §240.10b-5 ...................................................................... 6, 21

Defendant Mark S. Schwartz ("**Mr. Schwartz**"), through his attorneys, The Law Office of Brian Rosner and Williams Mullen, for the Brief in Support of his Motion to Dismiss the Consolidated Amended Complaint, states as follows:

## I.   <u>INTRODUCTION</u>

The Plaintiffs claim that Mr. Schwartz, a former President and Chief Operating Officer of Kmart, violated Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §78j(b), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder. More specifically, the Plaintiffs argue that Mr. Schwartz participated in a "fraudulent scheme" to disseminate misleading financial information about Kmart. (Compl. at ¶ 30.) The goal of this "scheme," according to the Plaintiffs, was to enable Mr. Schwartz and others to deceive the investing public about the value of Kmart stock in an effort to induce the public to purchase its stock at artificially inflated prices. *Id.* The Plaintiffs also claim that additional purposes of this "scheme" included facilitating Kmart's purchase of Bluelight.com with artificially inflated stock and permitting Kmart to sell $430 million of notes to institutional investors in a private transaction. *Id.* Finally, the Plaintiffs point to the fact that Mr. Schwartz and Mr. Conaway received retention bonuses as "proof" of the existence of this "scheme." *Id.* The Plaintiffs also seek to hold Mr. Schwartz liable as a "controlling person" within the meaning of Section 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §78t(a). (Compl. At ¶ 168).

Despite the 168 paragraph Complaint, the Plaintiffs' causes of action against Mr. Schwartz must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6): the Plaintiffs have failed to state a cause of action against him. In order to establish their claim of Section 10(b) and Rule 10b-5 violations, the Plaintiffs must plead that Mr.

Schwartz acted with the requisite scienter. In other words, the Plaintiffs must plead, among other elements, specific facts that create a strong inference of recklessness on the part of Mr. Schwartz. As set forth herein, the Plaintiffs have failed to plead a single fact from which a fact-finder could draw a strong inference that Mr. Schwartz acted with scienter.

## II. ARGUMENT

### A. The Plaintiffs Have Not Adequately Pled Any Cause Of Action Against Mr. Schwartz

In order to state a claim against Mr. Schwartz for securities fraud, the Complaint must set forth that, in connection with the purchase or sale of securities, Mr. Schwartz: (1) made a misstatement or omission, (2) of a material fact, (3) with scienter, (4) upon which the plaintiff justifiably relied, and (5) which proximately caused the plaintiffs' damages. *In re Comshare*, 183 F.3d 542, 548 (6th Cir. 1999) (internal citation omitted). The Supreme Court has defined "scienter" as a "mental state" embracing an intent to "deceive, manipulate or defraud," and has acknowledged that §10(b) proscribes "knowing or intentional misconduct." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976). In this Circuit, it is necessary to prove "recklessness" to establish scienter. The Sixth Circuit has defined "recklessness" as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1025 (6th Cir. 1979) (internal citations omitted).

To withstand a Rule 12(b)(6) motion, the Complaint must also satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) provides that "in all averments of fraud or intent, the circumstances constituting the fraud or mistake

shall be stated with particularity." [1]  *Havenick, et al. v. Network Express, Inc.*, 981 F.Supp. 480, 523 (E.D.Mich. 1997) (Rosen, J.).

One purpose of the Rule 9(b) "particularity requirement" is the elimination of meritless securities lawsuits.  When it became clear that Rule 9(b) did not further this objective, Congress enacted the Private Securities Litigation Reform Act ("PSLRA").  *In re Credit Acceptance Corp. Sec. Litig.*, 50 F.Supp.2d 662, 671 (E.D.Mich. 1999) (reflecting that "Congress was not satisfied that Rule 9 was sufficient to curb abuse of the securities laws by private litigants because 'the courts of appeals ha[d] interpreted Rule 9(b)'s requirements in conflicting ways, creating distinctly different standards among the circuits'").

The PSLRA heightened the "particularity" requirement for pleading scienter in a fraud case.  A complaint alleging securities fraud must now "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all the facts on which that belief is

---

[1]  The Sixth Circuit has held that the Rule 9(b) pleading requirement is satisfied when the complaint "specifies the parties and the participants to the alleged fraud scheme, the fraudulent intent of the defendants, reliance on the fraud, and the injury resulting from the scheme." *In re Credit Acceptance Corp. Sec. Litig.*, 50 F.Supp.2d 662, 671 (E.D.Mich. 1999) (internal citation omitted).

formed."[2] 15 U.S.C. § 78u-4(b)(1). The PSLRA also requires that the plaintiff state with particularity facts "giving rise to a strong inference that the defendant acted with the required state of mind." *In re Comshare*, 183 F.3d at 548 (internal citation omitted). If a plaintiff does not meet this requirement, a court must dismiss the complaint. *Id.*

In evaluating the effect of the new statute, the Sixth Circuit has explained that the PSLRA "did not change the scienter that a plaintiff must prove to prevail in a securities fraud case, but instead, changed what a plaintiff must plead in his complaint in order to survive a motion to dismiss." *In re Comshare*, 183 F.3d at 548-549; *see also*, *Helwig v. Vencor*, 251 F.3d 540, 553 (6th Cir. 2001, en banc) (stating that the PSLRA standard "represents a significant strengthening of the pre-PSLRA standard").

In *Helwig*, *supra*, the Sixth Circuit acknowledged that the PSLRA did not clarify how a plaintiff could prove that a defendant acted with the requisite scienter, and seeking to prevent parties and courts from being adrift in a "sea of allegations," it specified some factors that might be considered in determining whether a plaintiff had met the pleading requirement. *Helwig*, 251 F.3d at 552. The nine elements highlighted by the Court are: (1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent

---

[2] This Court has explained the application of the heightened pleading standard under the PSLRA, finding that, to survive dismissal, a complaint must identify: (1) the parties and the participants in the alleged fraud; (2) the time, place, and content of the representations; (3) each statement alleged to have been misleading; (4) the reason or reasons why the statement is misleading; (5) if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed; (6) the fraudulent scheme; (7) the fraudulent intent of the defendants; (8) reliance on the fraud; and (9) the injury resulting from the fraud. *In re Credit Acceptance Corp*, 50 F.Supp.2d at 671-72 (internal citation omitted).

information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information is such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; (9) the self-interested motivation of defendants in the form of saving their salaries or jobs. *Helwig v. Vencor*, 251 F.3d at 552 (internal citations omitted). These factors – the *Helwig* factors – established a "fixed constellation of facts that the courts have found probative of securities fraud." *Id.*

Although, as previously noted, the Complaint contains a multitude of paragraphs, there is not a single specific allegation that establishes that Mr. Schwartz acted with the requisite state of mind, namely, with the intent to deceive, manipulate or defraud. As set forth herein, none of the *Helwig* factors, which are indicative of scienter, are specifically alleged. In fact, only seven paragraphs of the Complaint contain allegations explicitly about Mr. Schwartz. These allegations can be summarized as follows: (i) Mr. Schwartz served as Kmart's President and Chief Operating Officer from March 14, 2001 until November 2001, and prior thereto, he acted as the Executive Vice President of Store Operations; (ii) Mr. Schwartz received a retention bonus, or loan, and "excessive" compensation during his tenure at Kmart; (iii) Mr. Schwartz signed one public filing; and, (iv) Kmart issued a January 17, 2002 press release announcing Mr. Schwartz's termination. (*See* Compl. at ¶¶ 8, 11, 21, 30, 63, 74, and 89.) These allegations, on their face, do not establish that Mr. Schwartz acted with the required state of mind, nor do

they, consequently, establish a claim for fraud. The remaining allegations contained in the Complaint concern the defendants collectively, and do not point to specific wrongdoing on the part of Mr. Schwartz. Due to the absence of the required particularized pleading, which will be discussed in greater detail in the following arguments, the Complaint, in its entirety, must be dismissed.

1.      **The Complaint Avers Only That Mr. Schwartz Signed One 10-Q But Does Not Sufficiently Plead That He Made Misstatements or Omissions With Fraudulent Intent**

In order to withstand a motion to dismiss, the Plaintiffs must plead, with specificity, that Mr. Schwartz personally made a false or misleading statement. *Benedict v. Cooperstock*, 23 F.Supp.2d 754, 758 (E.D. Mich. 1998) (requiring the plaintiffs to allege that: (1) the defendant made a false or misleading statement or omission in connection with the sale of a security that he knew, or should have known, would reach potential investors; (2) that the plaintiffs had relied on it; and (3) that the plaintiffs were thereby damaged) (internal citation omitted). While there is no requirement that a defendant communicate directly with a plaintiff, the plaintiff must allege that, at a minimum, he or she "relied on a misrepresentation or omission *attributable*" to the defendant. *Id.*

The Plaintiffs have not satisfied this basic pleading requirement. The only alleged "misrepresentation" or "omission" attributable to Mr. Schwartz is a misrepresentation or omission contained in Kmart's 10-Q for the second quarter of 2001, which he signed. Sixth Circuit courts have addressed whether the act of signing an SEC filing is sufficient to impose primary liability on the signatory, and have held that, in fact, it is not. Rather,

11

the courts require proof that the signatory acted with recklessness. *In re Rospatch Sec. Litig.,* 760 F.Supp. 1239, 1256 (W.D.Mich. 1991).

To evaluate whether a signatory acted with scienter when he or she signed a public filing, the courts, in applying the *Helwig* factors, have closely examined the role of the signatory in the alleged scheme. [*In Re Rospatch*, *supra* at 1256.] (citing *Halloway v. Howerdd*, 536 F.2d 690 (6th Cir. 1976), in which the Sixth Circuit dismissed a cause of action against a corporate officer because plaintiffs alleged no more than that he signed a public filing). In *Rospatch*, the Court held that an allegation that a company's Chief Operating Officer had simply signed a Form 10-K was, without more, insufficient to show that he was liable under the securities laws, and the Court dismissed the Complaint without granting leave to amend. *Id.* at 1256.

This Complaint fails to set forth any allegation from which it can be inferred, strongly or otherwise, that Mr. Schwartz knew that the 10-Q he signed was materially false or misleading. Nor do the Plaintiffs state that Mr. Schwartz engaged in highly unreasonable conduct when he signed the 10-Q. The Plaintiffs, in an attempt to plead scienter, point out that the Form 10-Q signed by Mr. Schwartz was subsequently restated, and assume that this allegation, on its own, is sufficient to establish Mr. Schwartz's recklessness. (Compl. at ¶ 63.) As set forth in Argument II (A)(2), *infra*, the Plaintiffs have no ground for this argument.

Aside from signing one 10-Q, the Plaintiffs have not alleged any other instance in which Mr. Schwartz made any representation to the public, or was even quoted in a press release. Indeed, the Complaint does not quote Mr. Schwartz a single time. The Plaintiffs have also failed to allege that Mr. Schwartz made any personal contribution to the

financial statements at issue. Plaintiffs are forced to rely on their vague and baseless assertion that that Mr. Schwartz "participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications." (Compl. at ¶ 27). However, such statements fail to meet the Plaintiffs' burden to allege a specific misrepresentation or omission attributable to Mr. Schwartz. As such, Count I of the Complaint must be dismissed.

2.      **Alleged Violations Of GAAP Do Not
        Give Rise To A Strong Inference of Scienter**

The alleged "foundation" of the Plaintiffs' fraud claim against Mr. Schwartz is that Kmart restated portions of its interim financial statements for the 2001 fiscal year. As stated in the Plaintiffs' Complaint, Kmart's annual report for the fiscal year 2001 applied a different accounting method for vendor allowances than the method applied in Kmart's previously filed interim financial statements for the fiscal year 2001. (*See generally*, Compl. at ¶¶ 95 through 139.) Accordingly, Kmart restated portions of its interim financial statements for the 2001 fiscal year.

Based on Kmart's restatement of its financial statements, the Plaintiffs have made the leap of logic that Kmart's interim financial statements violated generally accepted accounting principles ("GAAP")[3] (Compl. at ¶¶ 98-121.) Plaintiffs then ask the Court to assume that the implementation of an alternate accounting method, which alters the financial results when applied retroactively, is sufficient to prove: (1) that Kmart's 2000 and 2001 financial statements were materially false and misleading; and (2) that Mr.

---

[3]  The Plaintiffs also claim that Kmart, in violation of GAAP, failed to disclose related party transactions, failed to record impairment in the value of inventory, and failed to account for loss contingencies. (Compl. at ¶¶ 122-139.)

Schwartz knew that the financial statements were false and misleading when they were filed, months, or even a year, prior to the time that they were partially restated.

Even if the Plaintiffs could somehow prove their factual allegations, the incorrect assumptions underlying Plaintiffs' allegations would doom the Plaintiffs' claims. Case law has clearly established that allegations of GAAP violations, or accounting irregularities, standing alone, are insufficient to state a securities fraud claim. *In re Comshare,* 183 F.3d at 552-53 (internal citations omitted); *In re Credit Acceptance Corp.*, 50 F.Supp.2d at 680 (stating that GAAP violations or accounting errors, standing alone, do not give rise to an inference of scienter); *In re E.Spire Communications, Inc. Sec. Litig.*, 127 F.Supp.2d 734, 745 (D.Md. 2001) ("...scienter requires more than a misapplication of accounting principles.").

Allegations of GAAP violations or accounting errors may only suffice to state a fraud claim when such allegations are coupled with specific evidence of a "corresponding fraudulent intent." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (affirming dismissal of complaint because plaintiffs failed to aver that defendant, in neglecting to comply with GAAP, acted with fraudulent intent) (internal citation omitted). *See also, In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994) ("The mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter") (internal citation omitted); *Chalverus v. Pegasystems, Inc.*, 59 F.Supp.2d 226, 233-34 (D.Mass. 1999) (noting that the court must determine whether the alleged GAAP violations, combined with other circumstances indicative of fraudulent intent, raise a strong inference that the defendants acted with scienter). "To hold otherwise would subject every financial restatement to liability." *In re Sun Healthcare*

14

*Group, Inc. Sec. Litig.*, 181 F.Supp.2d 1283, 1297 (D.N.M. 2002). *See also, Goldberg v. Household Bank, F.S.B.*, 890 F.2d 965, 967 (7ᵗʰ Cir. 1989).[4]

Even if one were to assume that these statements did violate GAAP, the Plaintiffs have identified no evidence that would give rise to a strong inference that Mr. Schwartz intentionally or recklessly violated GAAP or misrepresented or misstated Kmart's financial information. In the present case Mr. Schwartz had no knowledge of a violation of GAAP. Nevertheless, even "[t]he mere fact that [defendant] discovered a violation of [GAAP] in its financial statements would not necessarily mean that it recklessly or intentionally committed those violations in the first place." *In re Orbital Sciences Corp. Sec. Litig.*, 58 F.Supp.2d 682, 687 (E.D.Va. 1999). And, although the Plaintiffs allege that these violations were the result of intentional conduct, they have not proven that Mr. Schwartz himself engaged in any deliberate acts to mislead.

Although the Plaintiffs seek to hold Mr. Schwartz responsible for allegedly misleading financial disclosures and restated interim financial statements, the Plaintiffs do not specifically identify how Mr. Schwartz played a part in the creation of these statements. The Plaintiffs do not aver that Mr. Schwartz was Kmart's Chief Financial

---

[4]  The fact that financials are restated does not *ipso facto* establish that the scienter requirement has been satisfied. *See, e.g., Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996) (opining that the "mere fact" that defendant issued a restatement of its previous financial statements, without further evidence of scienter, cannot constitute an actionable admission of fraud); *In re Segue Software, Inc. Sec. Litig.*, 106 F.Supp.2d 161, 169 (D.Mass. 2000) ("[a] restatement of earnings, without more, does not support a 'strong inference' of fraud, or for that matter, a weak one."); *In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F.Supp.2d 211, 223 (D.Mass. 1999) ("Thus, the mere fact that [defendants] voluntarily restated income in late 1998 does not, standing alone, support a 'strong inference' that [defendants] knowingly or recklessly misreported income...Instead, the Court must ask whether the GAAP violations, combined with other circumstances indicative of fraudulent intent, raise a strong inference that the defendants knowingly or recklessly misled investors.").

Officer, nor do they claim that he supervised or controlled Kmart's finance or auditing departments. The Plaintiffs do not plead that Mr. Schwartz was a member of the finance or audit committees, or that he participated in external or internal audits. The Plaintiffs do not assert that Mr. Schwartz is an accountant, or that he has any knowledge of GAAP.

The Plaintiffs fail to set forth any specific facts averring that, prior to their issuance, Mr. Schwartz had any knowledge that the interim financial statements allegedly deviated, in any respect, from the requirements of GAAP. Notably, the Plaintiffs do not specifically plead that Mr. Schwartz participated in the drafting, reviewing or editing of press releases, or other public statements. Indeed, the Plaintiffs assert that Kmart's restated interim financial statements were filed several months *after* Mr. Schwartz left the company.[5] (*See, e.g.,* Compl. at ¶¶ 98, 99.) The Plaintiffs' Complaint fails to allege that Mr. Schwartz played any active part in the decision to restate Kmart's interim financial statements.

The Plaintiffs have not specifically pled that Mr. Schwartz intended to mislead investors or intentionally distorted Kmart's financial condition. Accordingly, the Plaintiffs have not raised, as they must, a strong inference that Mr. Schwartz acted with scienter. "This deficiency is fatal to the Plaintiffs' claims" and, as such, Count I of the Complaint must be dismissed. *In re Credit Acceptance Corp.,* 50 F.Supp.2d at 680 (dismissing complaint, court held that violations of GAAP were insufficient to establish the strong inference required to satisfy the scienter requirement).

---

[5] The Plaintiffs' initially aver that Mr. Schwartz served as the company's President and Chief Operating Officer until November 19, 2001, but subsequently allege that Kmart issued a January 17, 2002 press release announcing Mr. Schwartz's departure from the company. (Compl. at ¶¶21, 74.) In fact, Mr. Schwartz left Kmart on January 15, 2002.

16

### 3. The Plaintiffs Have Not Adequately Pled That Mr. Schwartz Had Either The Opportunity Or The Motive To Commit Securities Fraud

The Sixth Circuit has determined that the PSLRA did not codify the Second Circuit's "motive and opportunity" test for establishing scienter. *In re Comshare*, 183 F.3d at 550. The Sixth Circuit has nevertheless acknowledged that motive and opportunity can be "catalysts to fraud" and may "serve as external markers to the required state of mind." *Helwig*, 251 F.3d at 550. Therefore, in assessing whether Mr. Schwartz acted with the requisite intent, "opportunity" and "motive" are two factors that, while not necessarily determinative, may be considered by the Court.[6] *Id.* at 551 (stating that "facts presenting motive and opportunity may be of enough weight to state a claim under the PSLRA, whereas pleading conclusory labels of motive and opportunity will not suffice.") (internal citations omitted).

The Plaintiffs cannot rely on the classic example of insider trading – Mr. Schwartz's sale of stock – to prove that he had the motive to commit fraud; Mr. Schwartz did not sell any stock during the class period. Rather, he, like the Plaintiffs, suffered financial losses when Kmart shares lost value. Indeed, as a matter of law, the fact that Mr. Schwartz did not sell Kmart stock strongly undermines any suggestion that he had knowledge that the company's financials were, as the Plaintiffs claim, false and misleading. *In re Credit Acceptance Corp.*, 50 F.Supp.2d at 677-78.

---

[6]    The Sixth Circuit has applied the Second Circuit's definition of "motive," finding that the "motive" requirement will generally be met when corporate insiders are "alleged to have misrepresented to the public material facts about the corporation's performance or prospects in order to keep the stock price artificially high while they sold their own shares at a profit." *Helwig*, 251 F.3d at 548.

The Plaintiffs make only one specific allegation concerning Mr. Schwartz's purported motive to commit fraud; the fact that, as part of his compensation package, he received a $3 million retention loan in December of 2001. (Compl. at ¶¶ 11, 89). While it is true that Mr. Schwartz received a retention loan in December 2001, this fact alone is insufficient to create a strong inference of a motive to commit fraud. The money that Mr. Schwartz received was not a gift, nor even a bonus, but a loan to be repaid (absent the occurrence of specific events). The loan to Mr. Schwartz was expressly approved by a disinterested Board of Directors. It is hard to envision, and even the Plaintiffs fail to explain, why a person would be motivated to commit or further a securities fraud, with the hope of receiving a loan.

In addition, because presumably all officers of corporations receive compensation, the Courts have consistently held that the receipt of compensation, without more, is not a motive for perpetrating securities fraud. *In re Comshare*, 183 F.3d at 553 (finding that receipt of higher compensation and the opportunity to sell stock at an inflated price are not facts supporting a high inference of scienter); *Yadlosky v. Grant Thornton, LLP*, 120 F.Supp.2d 622, 630 (E.D.Mich. 2000) (dismissing the complaint, finding that the only possible motive alleged against the defendants – the desire to continue receiving substantial auditing fees – was insufficient as a matter of law); *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001) (opining that "an allegation that defendants were motivated by a desire to maintain or increase executive compensation is insufficient because such a desire can be imputed to all officers.") *In re E.Spire Communication*, 127 F.Supp.3d at 742 (noting that purported desire to enhance compensation and

stockholdings is not sufficient to create a strong inference of scienter because "such allegations pertain to common motivations of corporate officers.")

In this case, it could be argued that the loan should be classified as "compensation" insofar as it was a benefit that Mr. Schwartz received as a result of his employment with Kmart. However, even if the loan was considered to be compensation, receipt of the loan, without more, would not create an inference that Mr. Schwartz acted with the requisite scienter.

4.     **The Plaintiffs Have Not Alleged That There Was A Divergence Between Mr. Schwartz's Public And Private Disclosures**

As set forth in Argument II(A)(1), *supra*, the Plaintiffs must plead with sufficient particularity that Mr. Schwartz acted with the requisite scienter, namely, with intent or recklessness. One of the factors that would raise an inference of scienter is a "divergence between internal reports and external statements on the same subject." *Helwig*, 251 F.3d at 552.

In the *Helwig* case, the Court denied the defendants' motion to dismiss, finding that the plaintiffs had satisfied the heightened pleading requirement under the PSLRA. One of the ways in which the plaintiffs satisfied this standard was to include in their complaint specific allegations of private statements made by the defendants about the prospects of their company. The complaint also included contemporaneous public statements made by the same defendants. Because the private statements were inconsistent with the public statements, the Court found that the plaintiffs had raised an inference that the defendants had acted with scienter. *Helwig*, 251 F.3d at 540. *See also, In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) (denying defendants'

19

motion to dismiss when the complaint included specific allegations as to divergence between company's internal reports and contemporaneous statements made to public on the ground that plaintiffs included specific information about who prepared internal company reports, how frequently the reports were prepared, and who reviewed them); *DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990) (dismissing claim against an accountant when the complaint did not include any specific allegations from which it would be possible to conclude that the accountant had knowledge that financial statements were false and misleading).

As discussed in Argument II(A)(2), *supra*, the Plaintiffs have incorrectly assumed that, because Kmart's 2002 financial statements restated portions of its 2001 interim financial statements and adopted a new method for accounting for vendor rebates, the prior financial statements were false and misleading. The Plaintiffs seek to hold Mr. Schwartz personally responsible for the purportedly false and misleading financial statements, simply because he signed a 10-Q in 2001. (Compl. at ¶ 63.)

However, as established above, Plaintiffs' allegations that Mr. Schwartz merely signed a false and misleading SEC filing is insufficient to avoid dismissal. The Plaintiffs were also required to set forth specific information demonstrating that, as of the time that Mr. Schwartz signed the filing in August 2001, he had knowledge or information from which he could conclude that the filing was false and misleading. The plaintiffs have made no such allegation in this case, and, therefore, Count I of the Complaint must be dismissed.

5.      **The Plaintiffs Cannot Satisfy The PSLRA Pleading Requirements By Basing**
        **Their Allegations On Anonymous Letters and Unnamed Sources**

        As previously noted, in order to establish their claim of Sections 10(b) and Rule

10b-5 violations, the Plaintiffs must plead with specificity that Mr. Schwartz acted with

the requisite scienter.  As set forth herein, despite the fact that the Complaint contains a

total of 168 paragraphs, there is not a single specific allegation in the entire Complaint

that could establish that Mr. Schwartz acted with the requisite state of mind, namely, with

intent to deceive, manipulate or defraud.  Only seven paragraphs of the Complaint

contain specific allegations against Mr. Schwartz; these allegations, even on their face, do

not create a strong inference that Mr. Schwartz acted with scienter, nor do they establish

that Mr. Schwartz committed securities fraud.  (Compl. at ¶¶ 8, 11, 21, 30, 63, 74 and

89.)  The remaining allegations in the Complaint concern the Defendants collectively,

and do not point to specific wrongdoing on the part of Mr. Schwartz.

        To establish their causes of action against the Defendants, the Plaintiffs rely on

numerous "quotations" from supposed "interviews" with unnamed "former employees of

Kmart" or anonymous "former employees of certain vendors of Kmart."  (*See generally*

Compl. at ¶ 34 through 45.)  However, the courts have interpreted the PSLRA as

requiring that unnamed sources be identified in a manner specific enough to allow the

courts to determine the credibility of the source.  *In re Silicon Graphics, Inc. Sec. Litig.*,

970 F.Supp. 746, 752 (N.D. Ca. 1997), *aff'd,* 183 F.3d 970, 985 (9th Cir. 1999) (stating

that the specificity requirement for complaints pled on information and belief cannot be

satisfied if the plaintiffs fail to identify the sources upon which their belief is based).

21

The courts have determined that the source of the allegation need not be named *per se*, but other facts contained in the pleadings must provide a basis for assessing the accuracy of the statements. *Novak v. Kasaks*, 216 F.3d at 314; *In re Party City Sec. Litig.*, 147 F.Supp.2d 282, 317-18 (D.N.J. 2001) (dismissing complaint with prejudice because the plaintiffs, in relying on anonymous sources, had fallen far short of the statute's pleading requirements). *See also, ABC Arbitrage Pls. Group v. Tchuruk*, 291 F.3d 336 (5th Cir. 2002), *reh'g and reh'g en banc denied*, 45 Fed.App. 327, __ F.3d __ (5th Cir. 2002).

Because Plaintiffs' Complaint relies largely on unnamed sources, it fails to satisfy the requirements of the PSLRA; the unnamed sources are not identified in any meaningful way, and the Court has no basis upon which to assess the credibility or motives of the speaker. As a general proposition, confidentiality is provided to sources to allow them to speak freely, without fear of retribution. However, in this case, there is no reason why the sources should not reveal their identities, particularly if, as the Plaintiffs claim, their information is credible. After all, Mr. Schwartz and the other Defendants no longer work for Kmart and, therefore, are not in positions to penalize the speakers.

Attached to Complaint are a number of anonymous letters, supposedly written by aggrieved Kmart employees working in the accounting department. Similar to the sources unidentified in the Complaint, the authors of these letters are unidentified, and as a result, Mr. Schwartz cannot examine their motives, the basis for their assertions, or their credibility. Mr. Schwartz contends that these letters should be stricken, and respectfully refers this Court to the accompanying Motion seeking this relief. At a minimum, the quotations of these letters contained in body of the Complaint should be disregarded as

22

failing to comply with the pleading requirements codified by the PSLRA. In stating their claims against Mr. Schwartz, the Plaintiffs have relied extensively on unidentified sources, thus failing to satisfy the pleading requirement of the PSLRA. Accordingly, Count I of the Complaint must be dismissed.

**B. The Plaintiffs Have Failed To Plead The Requisite Elements For Liability Of "Controlling Persons" Under Section 20(a) And Therefore Count II Must Be Dismissed**

Section 20(a) of the Exchange Act imposes secondary liability on "controlling persons" for securities law violations perpetrated by others.[7] Thus, in order to show that Mr. Schwartz is secondarily liable under Section 20(a), the Plaintiffs must establish that a primary actor has violated the securities laws. Because, as discussed in Argument II(A), *supra*, the Plaintiffs have failed to state a claim against Mr. Schwartz, Count II of the Complaint must be dismissed.

Even assuming, *arguendo*, that the Plaintiffs have pled that one of the Defendants (or even another person) was a primary violator of the Act, the Plaintiffs have not surmounted the next hurdle of sufficiently pleading that, under Section 20(a), Mr. Schwartz was a "controlling person" of a primary violator. Although federal circuits

---

[7] Section 20 (a) of the 1934 Act provides that:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

have articulated varying standards for proving that an individual is a "controlling person," courts have consistently held that a person's status, in and of itself, does not establish that a person is a "controlling person" within the meaning of the statute. *See, e.g., Herm v. Stafford,* 663 F.2d 669, 684 (6th Cir. 1982); *Ballan v. Upjohn Co.,* 814 F.Supp. 1375, 1388-89 (W.D. Mich. 1992) (internal citation omitted); *In re Rospatch,* 760 F.Supp. at 1264. *See also, Rubenstein v. Skyteller, Inc.,* 48 F.Supp.2d 315, 323 (S.D.N.Y. 1999).

Because identification of a "controlling person" cannot be conducted by referring exclusively to his or her job title, the courts have adopted various benchmarks for making this determination. For example, the Eighth Circuit has employed the "potential control" test under which a plaintiff must prove that the defendant actually participated in (i.e., exercised control over) the operations of the primary defendant, and possessed the power to control the specific transaction or activity that constituted the primary violation. *Metge v. Baehler,* 762 F.2d 621, 630 (8th Cir. 1985), *cert. denied,* 474 U.S. 1057 (1986).

The Sixth Circuit has not expressly adopted either the "potential control" test, or the "culpable participation" test, another test frequently employed by the courts. However, in *Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 486 (6th Cir. 1992) the Sixth Circuit found it unnecessary to choose between the two tests, as the plaintiffs had failed to plead sufficient acts of control under the less rigorous "potential control" test articulated by the Eighth Circuit in *Metge, supra.* At least two district courts in the Eastern District of Michigan have found that the dicta in *Sanders* constituted an adoption of the *Metge* standard by the Sixth Circuit. *See Benedict v.*

*Cooperstock,* 23 F.Supp.2d at 757; *Vennittilli v. Primerica, Inc.,* 943 F.Supp. 793, 801 (E.D.Mich. 1996).

In the context of the "potential control" standard, the Plaintiffs, in two respects, have neglected to plead a *prima facie* case of control. First, Count II of the Complaint omits to allege, with specificity, that Mr. Schwartz actually participated in, or exercised control over, the operations of Kmart. Second, the Complaint fails to assert that Mr. Schwartz had the power to control the specific transaction upon which the primary violation is predicated.[8]

Rather, the Complaint simply avers a generalized statement of control: that Mr. Schwartz, as part of a group of Defendants, "[a]s officers and controlling persons . . . had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition" and that the "Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations." (Compl. at ¶ 26.) Elsewhere, the Complaint alleges that the Defendants "were able to and did control the content of the various SEC filings, press releases and other public statements," and that the Defendants "were provided with copies of the documents alleged [in the Complaint] to be misleading prior to or shortly after their issuance and/or

---

[8] The Second Claim of the Complaint simply avers:

> By reason of their positions as officers and/or directors of Kmart, the Individual Defendants had the power and authority to cause Kmart to engage in the wrongful conduct complained of herein. Kmart controlled the Individual Defendants and all of its employees. By reason of such conduct, these defendants are liable pursuant to §20(a) of the Exchange Act.

(Compl. at ¶168.)

25

had the ability and/or opportunity to prevent their issuance or cause them to be corrected." (Compl. at ¶¶ 28, 88.)

The Plaintiffs' claims are boilerplate, and as such, fail to allege with adequate specificity, as required by the PSLRA, Mr. Schwartz's supposed control. More importantly, the Plaintiffs have failed to actually plead the elements of control required by the "potential control" test. As noted above, the Plaintiffs were required to specifically plead that the Defendant actually exercised control over the actions of the primary violator, and possessed the power to control the specific transaction or activity that constitutes the primary violation. Thus, although the Plaintiffs seek to hold Mr. Schwartz responsible for allegedly misleading financial disclosures, the Plaintiffs do not, aside from their blanket allegations of control, specifically identify how Mr. Schwartz had the power to control the creation or dissemination of these statements.

Thus, the Plaintiffs do not aver that Mr. Schwartz was Kmart's Chief Financial Officer, nor do they claim that he supervised or controlled the employees in Kmart's finance or auditing departments. The Plaintiffs do not plead that Mr. Schwartz participated in external or internal audits, nor do they assert that he is an accountant, or that he has knowledge of GAAP and/or GAAS. Notably, the Plaintiffs do not claim that Mr. Schwartz participated in the drafting, supervising, reviewing or editing of the press releases, or other public statements.[9]

---

[9] As set forth in Argument II (A)(1), *supra*, the fact that Mr. Schwartz signed one 10-Q is insufficient to establish Mr. Schwartz's liability for a Rule 10(b) violation.

26

Insofar as the Complaint contains any quasi-allegations against Mr. Schwartz, he is alleged to have participated in accounting fraud. See Argument II(A), *supra*. Nonetheless, the Plaintiffs fail to aver that Mr. Schwartz, Kmart's Chief Operating Officer, had any control over the other Defendants. For example, the Plaintiffs do not specifically plead that Mr. Schwartz had a duty to control, or, in fact, exercised any control over the Defendant Conaway, the Chief Executive Officer, the Defendants Boyer and Welch, the Chief Financial Officers, or the Defendant Hilzinger, the Controller. Nor do the Plaintiffs allege any controlling relationship by and between Mr. Schwartz and any other unnamed alleged primary violator, including employees of Kmart's audit and finance departments.

In short, the Plaintiffs have failed to plead control of any primary violator by Mr. Schwartz. *See, e.g., Sanders*, 973 F.2d at 485 (stating that a "controlling person" shares liability for violations of securities laws with the primary violator it controlled).

Finally, the Plaintiffs have been so careless in their sweeping characterizations of control that they seek to hold Mr. Schwartz liable for purported misstatements that allegedly occurred during the class period, but months *after* Mr. Schwartz's January 15, 2002 termination from Kmart. (*See, e.g.*, Compl. at ¶¶ 98, 99.) Mr. Schwartz should not be held liable for alleged misstatements made subsequent to his departure from Kmart. Nor should Mr. Schwartz be held liable for the alleged nondisclosure of his retention loan, because he received it a month prior to departing the company, and it was subsequently disclosed in the Form 10-K. (Compl. at ¶¶ 122, 123, 124.) For the above-

27

stated reasons, the Plaintiffs have failed to plead the requisite two-part "potential control" test and, as such, Count II of the Complaint must also be dismissed.[10]

## III.    CONCLUSION

For the foregoing reasons, Defendant Mark S. Schwartz respectfully requests that this Court grant his Motion to Dismiss the Consolidated Amended Complaint, and grant any further relief that this Court deems just and proper.

Respectfully submitted,

One of the Attorneys for
Defendant  Mark S. Schwartz

**Law Office of Brian Rosner**
Attorneys for Defendant Schwartz
By:  Brian Rosner
Natalie A. Napierala
3 New York Plaza – 14th Floor
New York, NY 10004
212.785.2577

**Williams Mullen**
Eric H. Lipsitt (P32117)
Michael A. Sneyd (P52073)
11th Floor Buhl Building
535 Griswold Street
Dated:  November 22, 2002          Detroit, MI 48226
313.962.0643

---

[10]  Because the Complaint fails to plead the requisite elements of the "potential control" test against Mr. Schwartz, the Plaintiffs have, by definition, failed to meet their burden of pleading the more stringent "culpable participation" standard.  Under this test, in addition to merely proving that Mr. Schwartz occupied a position of control, the Plaintiffs would be required to illustrate that Mr. Schwartz was a culpable participant in the fraud perpetrated by a controlled person.  *See, e.g., Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1977), and its progeny.  The Plaintiffs' speculative allegations fail to establish that Mr. Schwartz, with conscious intent, aided in any alleged fraud. Therefore, the Complaint also fails to meet the "culpable participation" test. *See, e.g., SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1472-73 (2d Cir. 1996) (noting that, under the "culpable participation" test, the PSLRA requires a plaintiff to allege particular facts that give rise to a "strong inference" of the requisite state of mind).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

D.E. & J LIMITED PARTNERSHIP,
individually and on behalf of All Others
Similarly Situated,

       Plaintiffs,

v

CHARLES CONAWAY, JEFFREY BOYER,
MARK S. SCHWARTZ, MATTHEW F.
HILZINGER, MARTIN E. WELCH, and
PRICEWATERHOUSECOOPERS, LLP,

       Defendants.

Case No. 02-70684
Hon. Gerald E. Rosen

**NOTICE OF HEARING
REGARDING DEFENDANT
MARK S. SCHWARTZ'S
MOTION TO DISMISS
THE CONSOLIDATED
AMENDED COMPLAINT**

---

**Milber Weiss Bershad Hynes & Lerach, LLP**
Attorneys for Plaintiffs
By: Samuel H. Rudman
Kim Miller Levy
One Pennsylvania Place - 49th Floor
New York, NY 10119
212.594.5300

**Mantese Miller and Mantese, P.L.L.C.**
Local Counsel for Plaintiffs
By: E. Powell Miller (P39487)
Marc L. Newman (P51393)
1301 W. Long Lake Road
Suite 135
Troy, MI 48098
248.267.1200

**Barris, Sott, Denn & Driker, P.L.L.C.**
Local Counsel for Defendant Conaway
By: Sharon M. Woods (P22542)
Todd R. Mendel (P55447)
Matthew R. Millikin (P63011)
211 West Fort Street, 15th Floor
Detroit, MI 48226
313.965.9725

**Schiffrin & Barroway, LLP**
Attorneys for Plaintiffs
By: David Kessler
Three Bala Plaza East
Suite 500
Bala Cynwyd, PA 19004
610.667.7706

**Sidley Austin Brown & Wood**
Attorneys for Defendant Conaway
By: Walter C. Carlson
Scott R. Lassar
Hille R. Sheppard
Erin E. Kelly
Bank One Plaza, 10 S. Dearborn St.
Chicago, IL 60603
312.853.7000

**Kirkland & Ellis**
Attorneys for PriceWaterhouse
By: John F. Hartmann
200 East Randolph Drive
Chicago, IL 60601
312.861.2215

**Law Office of Brian Rosner**
Attorneys for Defendant Schwartz
By: Brian Rosner
Natalie A. Napierala
3 New York Plaza
New York, NY 10004
212.785.2577

**Williams Mullen**
Local Counsel for Schwartz
By: Eric H. Lipsitt (P32117)
Michael A. Sneyd (P52073)
11th Floor Buhl Building
535 Griswold Street
Detroit, MI 48226
313.962.0643

To:    CLERK OF THE COURT
       ALL COUNSEL OF RECORD

PLEASE TAKE NOTICE that a hearing will be conducted on Defendant, Mark

S. Schwartz's Motion To Dismiss The Consolidated Amended Complaint before the

Honorable Gerald E. Rosen, in his courtroom located at the United States District

Court for the Eastern District of Michigan, Theodore Levin United States Courthouse,

231 West Lafayette Boulevard, Detroit, Michigan 48226, at a date and time to be set

by the Court.

Respectfully submitted,

One of the Attorneys for
Defendant Mark S. Schwartz

**Law Office of Brian Rosner**
Attorneys for Defendant Schwartz
By: Brian Rosner
Natalie A. Napierala
3 New York Plaza – 14th Floor
New York, NY 10004
212.785.2577

**Williams Mullen**
Eric H. Lipsitt (P32117)
Michael A. Sneyd (P52073)
11th Floor Buhl Building
535 Griswold Street
Detroit, MI 48226
313.962.0643

Dated: November 22, 2002
P:\PENDING\DE&J-Schwartz\noh.mtn-Strike.doc

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

D.E. & J LIMITED PARTNERSHIP,
individually and on behalf of All Others
Similarly Situated,

     Plaintiffs,

v

CHARLES CONAWAY, JEFFREY BOYER,
MARK S. SCHWARTZ, MATTHEW F.
HILZINGER, MARTIN E. WELCH, and
PRICEWATERHOUSECOOPERS, LLP,

     Defendants.

Case No. 02-70684
Hon. Gerald E. Rosen

**PROOF OF SERVICE OF DEFENDANT
MARK S. SCHWARTZ'S MOTION TO
DISMISS THE CONSOLIDATED AMENDED
COMPLAINT**

---

**PROOF OF SERVICE**

STATE OF MICHIGAN  )
                ) SS.
COUNTY OF WAYNE    )

**Beverly Agla,** being first duly sworn deposes and states that on **November 22,**

**2002,** she served a copy of Defendant, Mark S. Schwartz's Motion To Dismiss The

Consolidated Amended Complaint; Brief in Support of Defendant, Mark S.

Schwartz's Motion To Dismiss The Consolidated Amended Complaint; Notice of

Hearing and this proof of service upon:

Samuel H. Rudman, Esq.
Kim Miller Levy, Esq.
Milber Weiss Bershad Hynes & Lerach, LLP
One Pennsylvania Place - 49th Floor
New York, NY 10119

David Kessler, Esq.
Schiffrin & Borroway, LLP
Three Bala Plaza East
Suite 500
Bala Cynwyd, PA 19004

E. Powell Miller, Eaq.
Walter C. Carlson, Esq.
Marc L. Newman, Esq.
1301 W. Long Lake Road
Suite 135
Troy, MI  4809

Scott R. Lassar, Esq.
Hille R. Sheppard, Esq.
Erin E. Kelly, Esq.
Sidley Austin Brown & Wood
Bank One Plaza, 10 S. Dearborn St.
Chicago, IL  60603

Sharon M. Woods, Esq.
Matthew R. Millikin, Esq.
Barris, Sott, Denn & Driker, P.L.L.C.
211 West Fort Street, 15th Floor
Detroit, MI  48226

John F. Hartmann, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, ILL  60601

by placing copies of these documents in a postage pre-paid envelopes duly addressed to

said parties and depositing same in the U.S. Mail receptacle in the lobby of the Buhl

Building, Detroit, Michigan.

      Further affiant sayeth not.

BEVERLY AGLA

Subscribed and sworn to before me
this 22nd day of November, 2002.

Notary Public, Wayne County, MI
My Commission Expires: 01-06-03

P:\PENDING\DE&J-Schwartz\pos.mtn-Dismiss.doc

2